IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00675-WYD-BNB

ROBERT A. DOLIN, and
LISA DOLIN,

Plaintiffs,

v.

CONTEMPORARY FINANCIAL SOLUTIONS, INC., and
MUTUAL SERVICE CORPORATION,

Defendants.

_____

**ORDER**
_____

This matter arises on the **Motion of Defendants . . . for an Order Striking Plaintiffs' Expert Designation and Report, and Precluding Plaintiffs' Expert From Testifying at Trial** [Doc. # 79, filed 11/12/2009] (the "Motion to Strike Expert").  I held a hearing on the motion on December 7, 2009, and took the matter under advisement.  I now DENY the Motion to Strike Expert.

The plaintiffs have disclosed Richard Djokic as both a principal expert and a rebuttal expert with respect to matters concerning securities laws.  Mr. Djokic has issued two reports.  The first is dated August 14, 2009; is 15 pages in length; and contains his opinions concerning matters about which the plaintiffs bear the burden of proof.[1]  The second report is dated

---

[1] A copy of the August 14, 2009, expert report (the "First Expert Report") is attached as Exhibit 1 to the Plaintiffs' Response to Motion to Strike Plaintiffs' Expert [Doc. # 94-2].

September 14, 2009; is three pages long; and contains his rebuttal opinions.[2]

The defendants complain that Mr. Djokic's expert reports are deficient as follows:

> There are four bases for striking the report and precluding Plaintiffs' expert from giving his opinions at trial. First, Plaintiffs' expert, Richard Djokic, used in support of his opinions, [Robert] Bryant's testimony from two depositions that Plaintiffs took in an unrelated case. Plaintiffs' expert did not provide those transcripts with his report, nor has he ever provided them. In addition, that hearsay testimony may not be used to support the expert's opinion, even if it had been timely produced as required.
>
> Second, in forming his opinions, Plaintiffs' expert considered third-party investigative "reports" prepared by the FBI and the Colorado Attorney General's office. The expert did not mention those documents in his written report, nor did he provide copies of those documents with his written report or at his deposition. Defendants first learned of the existence of the litigation reports at the expert's deposition. In addition, even if Plaintiffs' expert had disclosed and timely provided the third-party "reports," those reports may not be used to support an expert opinion.
>
> Third, Plaintiffs' expert testified at his deposition that he acted as the State's securities expert in the previous criminal case against Bryant. The expert did not mention this fact in his report, he did not provide any documents related to that engagement with his report or at his deposition, and he also has not provided all of the documents that he considered in connection with that engagement as he was required to do. The few litigation reports that the expert did provide were not produced until after the expert's deposition and after the discovery deadline.
>
> Last, Plaintiffs' expert purports to render a legal opinion in this case, which he may not do. Because the discovery cut-off date has passed, and because neither Plaintiffs nor their expert disclosed or produced the necessary documents before the discovery cut-off, Defendants have been prejudiced in their ability to confront, cross-examine and challenge Plaintiffs' expert, his opinions, and the

---

[2] A copy of the September 14, 2009, expert report (the "Second Expert Report") is attached as Exhibit 4 to the Motion to Strike Expert [Doc. # 79-5].

> factual bases for those opinions. For these reasons, Rule 37 requires that the expert's opinions be excluded.

Motion to Strike Expert [Doc. # 79] at pp. 2-3.

Rule 26(a)(2)(B), Fed. R. Civ. P., requires the following disclosure by expert witnesses:

> **(2)** *Disclosure of Expert Testimony*
> \* \* \*
> **(B)** *Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;
> **(ii)** the data or other information considered by the witness in forming them;
> **(iii)** any exhibits that will be used to summarize or support them;
> **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;
> **(v)** a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

Rule 37(c), Fed. R. Civ. P., provides the remedy available in the event a party fails to make the required disclosure, as follows:

> **(c)  Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
> **(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> **(B)** may inform the jury of the party's failure; and

>   **(C)** may impose other appropriate sanctions, including any of the
>   orders listed in Rule 37(b)(2)(A)(i)-(vi).

### 1. The Bryant Deposition Transcripts

The defendants complain first that Mr. Djokic relied on a deposition of a third-party witness, Robert Bryant, taken in a different case, and that copies of that deposition transcripts were not physically produced to them with the expert report. Mr. Djokic's reliance on the Bryant deposition was disclosed, however, in the First Expert Report as among the "materials and information reviewed" by him in reaching his opinions. First Expert Report [Doc. # 94-2] at p. 1.

Rule 26(a)(2)(B)(ii), Fed. R. Civ. P., requires that an expert report "must <u>contain</u> . . . the data or other information considered by the witness in forming" his opinions. (Emphasis added.) It is sufficient, however, to provide in the expert report a listing of the data and other information considered by the expert, which must be provided or otherwise made available for inspection upon request. The rule does not require that all data or other information considered by the expert must be copied and physically provided with the report. See <u>Cook v. Rockwell Int'l Corp.</u>, 580 F. Supp. 2d 1071, 1121-22 (D. Colo. 2006)(noting that the purpose of expert disclosures is "to eliminate surprise and provide opposing counsel with enough information . . . to prepare efficiently for deposition, any pretrial motions and trial," and holding that the report need not "contain, or be accompanied by, all of the expert's working notes or recordings"); <u>Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.</u>, 168 F.R.D. 61, 62 (D. N.M. 1996)(holding that "it is clear that all documents provided to a party's expert witness must be produced <u>on request</u>" (emphasis added)); Advis. Comm. Notes to 1993 Amendments, Subdiv. (a)(2) (noting that the expert's report "is to <u>disclose</u> the data and other information considered by the

expert"(emphasis added)).

Plaintiffs' counsel asserts, and the defendants do not assert otherwise, that "the undersigned on several occasions between the service of the August Report and Mr. Djokic's Deposition [on October 2, 2009] offered to make arrangements to have the Bryant deposition transcripts delivered to Defendants' counsel, who was silent in the face of those overtures." Plaintiffs' Response to Motion to Strike Plaintiffs' Expert [Doc. # 94, filed 12/3/2009] (the "Response") at ¶21. The plaintiffs' listing in their expert's report of the deposition transcripts as information considered and their offer to make the deposition transcripts available to the defendants for inspection and copying satisfies the requirements of Rule 26(a)(2)(B)(ii).

Nor does the fact that Mr. Djokic relied, in part, on hearsay testimony contained in the Bryant deposition require that I strike him as an expert. To the contrary, Rule 703, Fed. R. Evid., specifically provides that the evidence relied on by an expert need not be independently admissible:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703.

There is no evidence before me establishing whether experts in Mr. Djokic's field rely on the statements of witnesses in forming their opinions. In any event, the plaintiffs have specifically represented that they will not attempt to introduce the substance of Bryant's deposition testimony through Mr. Djokic. Consequently, Mr. Djokic's reliance on Bryant's deposition testimony in forming his opinions, alone, does not warrant striking him as an expert witness.

## 2. The FBI and Colorado Attorney General Investigative Reports

The defendants correctly note that Mr. Djokic's written report does not identify the FBI and Attorney General Investigative Reports as information considered by him in reaching his opinions. To the contrary, the defendants first learned of the investigative reports during Mr. Djokic's deposition, where he testified:

> Q: Is there any other information or factual basis that you use to rely on that--to arrive at the same opinion, that the securities laws were violated?
>
> A: Yes.
>
> Q: What else?
>
> A: I was the state's expert in Mr. Bryant's criminal case, and based upon that and the--what I reviewed with respect to providing grand jury testimony in that matter would have been other information that I relied upon.
>
> And he did subsequently, I believe--that did not go to trial. I believe he did enter a guilty plea to one count of securities fraud.
>
> Q: What information did you get in connection with your acting as the state's expert in Robert Bryant's case?
>
> A: I was provided by the Colorado Attorney General's Office investigative information, witness interviews, copies of the various forms of the agreements, the note agreements for the NCM program.
>
> There were--no, those would have been the witness statements. There were statements taken b y the FBI in addition to investigators for the state attorney general's office that I recall reviewing.

Deposition of Richard Djokic [Doc. # 79-2 , filed 11/12/2009] (the "Djokic Depo.") at p. 21 line 5 through p. 22 line 3.

The FBI and Attorney General Investigative Reports were turned over to the defendants

on October 24, 2009, approximately three weeks after Mr. Djokic's deposition.[3]

In Jacobsen v. Deseret Book Co., 287 F.3d 936 (10th Cir. 2002), the Tenth Circuit Court of Appeals held that a district court should "refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless." Id. at 952. In determining whether a violation is harmless, I must consider the following:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Id. at 953.

Here, the prejudice articulated by the defendants is that they were surprised to learn of Mr. Djokic's reliance on FBI and Attorney General Investigative Reports; those materials had not been provided to them with the expert report; and they were not prepared to question Mr. Djokic about them at his deposition. That prejudice is easily cured, however, by allowing the defendants to redepose Mr. Djokic about matters relating to the FBI and Attorney General Investigative Reports and his consideration of them. The case is not yet set for trial, and there is adequate time for the follow-up deposition of Mr. Djokic without disrupting the trial. Nor do I find any bad faith or willfulness on the part of the plaintiffs in connection with the failure to

---

[3]At the hearing on the Motion to Strike Expert, defendants' counsel argued, without any supporting evidence, that he had not received all of the FBI and Attorney General Investigative Reports considered by Mr. Djokic. Plaintiffs' counsel assured me that all of those materials were turned over and that Mr. Djokic was prepared to testify to that effect if necessary. Mr. Djokic was not present at the hearing, however, and his testimony could not be taken. This issue may be clarified at Mr. Djokic's follow-up deposition, if necessary.

identify the FBI and Attorney General Investigative Reports as information considered by Mr. Djokic in forming his opinions.

The defendants also argue that "the FBI and Attorney General litigation reports constitute inadmissible hearsay on which an expert may not reasonably rely in forming his opinions." As noted above, Fed. R. Evid. 703 specifically provides that the evidence relied on by an expert need not be independently admissible. In addition, there is no evidence before me establishing whether experts in Mr. Djokic's field rely on police investigative reports in forming their opinions. Mr. Djokic's reliance on FBI and Attorney General Investigative Reports in forming his opinions, alone, does not warrant striking Mr. Djokic as an expert witness.

### 3.  Service as the State's Expert in the Bryant Criminal Case

It is undisputed that Mr. Djokic was an expert on behalf of the State of Colorado in connection with the criminal prosecution of Robert Bryant. The defendants argue that this requires Mr. Djokic's disqualification here for the following reason:

> In that engagement, the expert reviewed not only the litigation reports referred to above, but also other unidentified materials that Plaintiffs have never produced. Because of that engagement, the expert was required by Rule 26 to produce not only all of the witness statements and interviews, but also his complete file for that engagement. He has never done so.

Motion to Strike Expert [Doc. # 79] at pp. 10-11.

Once again, see n.3 supra, there is a dispute about whether all data and other information considered have been disclosed. The defense claims, but without any supporting evidence, that they have not been given all of the information reviewed by Mr. Djokic in connection with the criminal case. Plaintiffs' counsel assured me at the hearing on this motion that all materials were turned over and that Mr. Djokic was prepared to testify to that effect. This issue also may be

clarified at Mr. Djokic's follow-up deposition.

On the record before me, I cannot say that all materials considered by Mr. Djokic were not disclosed to the defendants, although some were disclosed late. Any prejudice to the defendants resulting from the late disclosure can be cured by a follow-up deposition of Mr. Djokic, which can be taken without disrupting the trial of the matter. Nor is there any evidence of bad faith or willfulness by the plaintiffs.

### 4. Plaintiff Is Rendering an Improper Legal Opinion

Finally, the defendants argue that Mr. Djokic should be stricken as an expert on the following ground:

> Plaintiffs' written report, as explained by his deposition, contains his legal opinion that Bryant was an "employee" of CFS, rather than its agent. That legal opinion, particularly from an expert designated as a securities expert, in inadmissible.

Motion to Strike Expert [Doc. # 79] at p. 11 (internal citation omitted).

The defendants misstate the substance of Mr. Djokic's written report and deposition testimony. The portion of the written report about which the defendants complain states simply that "CFS employed Mr. Bryant in a remote one-person branch office in Colorado." Second Expert Report [Doc. # 79-5] at p. 1 (emphasis added). The report does not specify whether Bryant was an employee, an independent contractor, or served in some other capacity. The term "employed" was used in a manner synonymous with "engaged." Any objection to the specific phrasing of a question or Mr. Djokic's response as to the nature of Bryant's relationship with defendant Contemporary Financial Solutions, Inc., can be raised by a motion in limine or a contemporaneous objection at trial. This isolated statement in Mr. Djokic's written report creates no basis to strike him as an expert witness.

Similarly, Mr. Djokic did not testify at his deposition that Bryant was an employee of Contemporary Financial Solutions, Inc. Rather, in response to a series of questions by the defendants' counsel, Mr. Djokic testified as follows:

> Q: Is it your opinion that Robert Bryant was an independent contractor of Contemporary Financial?
>
> MR. LEGO [plaintiffs' counsel]: Object to the form; no foundation.
>
> A: In the securities world, there's really no such thing.
>
> Q (BY MR. BOCKMAN): On what do you base that opinion?
>
> A: Because of the regulatory obligations imposed upon CFS, the employing broker. For some purposes, you may--someone may be an independent contractor.
>
> However, in my view and my experience, that because of the obligation at the feet of CFS to supervise and oversee the activities of Mr. Bryant, he is not a true independent contractor.

Djokic Depo. [Doc. # 79-2] at p. 71 lines 1-17.

Mr. Djokic's answers during his deposition to opposing counsel's questions affords no basis to disqualifying him as of an expert. There is no indication that Mr. Djokic intends to opine about whether Bryant was an employee or served in some other capacity. If the matter arises at trial, it may be addressed by a contemporaneous objection.

IT IS ORDERED that the Motion to Strike Expert is DENIED.

IT IS FURTHER ORDERED that to cure any prejudice resulting from the late disclosure of materials considered by the expert, the defendants may at their option reopen the deposition of Richard Djokic to inquire about matters relating to (1) the FBI and Attorney General Investigative Reports and Mr. Djokic's consideration of them, and (2) the scope of data and

other information reviewed by Mr. Djokic in connection with his service as an expert witness for the State of Colorado in the criminal prosecution of Robert Bryant. Mr. Djokic's reopened deposition shall be taken at a date, time, and place[4] as the parties may agree, but in no event later than **January 22, 2010**. The reopened deposition shall last no more than four hours.

Dated December 8, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[4] Defendants' counsel requested that the reopened deposition be taken in California, where he offices, and at the plaintiffs' expense. I decline to impose such a sanction. This is a matter brought in a court sitting in Colorado, involving events largely occurring in Colorado, and which could have been defended by Colorado counsel. I will not penalize the plaintiffs for the defendants' choice of California counsel.